May it please the court. The district court here applied a crime of violence enhancement that more than doubled the guidelines range and the government in its briefing does not dispute that it was an error to do so. This court should grant relief so that Mr. Gutierrez can be re-sentenced based on the correct guidelines range. The error in this case was based on a straightforward principle of law. Crimes that require only a mens rea of recklessness do not qualify as crimes of violence under the Force Clause. Virtually every circuit including this one has applied that principle and the government still has not cited any conflicting authority on that point. The Ninth Circuit applied this recklessness principle to the very statute at issue here California Penal Code section 246 and concluded that because of that offense requires only a mens rea of recklessness it does not qualify as a crime of violence under the immigration guideline. Did you point that out to the district judge? Your Honor we concede that this is under plain error review. Absolutely. If it's so obvious why didn't you point it out? Well Your Honor the standard under plain error review isn't whether it's so obvious that it was pointed out if that were the standard you could never get relief on plain error review. The standard is whether after you identify the error is it one that is clear obvious and here it is in light of this unanimous authority across every circuit court has applied this principle and including this court in the Beiranu and Garcia cases applied this recklessness principle to the provisions of 18 U.S.C. section 16. That's the the same principle that the Ninth Circuit applied with respect to this particular statute and for that reason I think there is a the consensus across the circuit shows both that there was an error here and that it was a plain error. Why would it be plain when the statute speaks in terms of willfully and maliciously shooting into an inhabited dwelling? I mean you know regardless of whether it's error or not when the language of the statute itself speaks of and willfully and malicious shooting that's the point. You know I know all the arguments that well this is recklessness but I mean what you don't say willfully and maliciously and say well under the force clause this is not directed at a particular individual of the person of another and I understand all those arguments but the arguments on one side of a case it should have been brought up before the district judge. Your honor again we certainly can see this was an error that was overlooked by counsel overlooked by the probation office by the other parties everybody missed it and that's why we're here under plain air review we can see that we don't attempt to make any argument that it's anything more than that but the reason you look you look beyond the label in the statute which I agree the California statute itself says willful and malicious in it but there's consensus again in the Supreme Court and across every circuit that we don't simply defer to the labels on statutes we look to how they're construed in the state courts and the elements as they're applied in the state courts when you do that analysis here the conclusion is inevitable it's clear it's plain it's obvious that this isn't a crime of violence under this court's law and under the case law in every circuit court across the country again I mean I we concede it was plain air it's absolutely should have been pointed out and the reason had it been pointed court you know the district court needs help from the lawyers and and you've got the Supreme Court's opinion in Gaul and trial courts are really the key players in the sentencing process and I would suspect that that would lead you to believe that the reversals on playing arrow with question of whether the predicate California crime was a crime were never even raised before the trial court that would be to avoid situations like this where the matter could have been disposed of perhaps in your favor but it it just seems to me that you are asking for something that goes against the normal way in which sentencing and sentencing appeals are expected to proceed we haven't even gotten to the fourth problem I'm just talking about giving a language on the face of the statute I read the opinions as you're saying they're all so clear seem to me the spraying all over the place and many of the things that are argued about in supplemental authority thing came down after the district court made a decision well you're on our couple of points on that first under the Henderson decision from the Supreme Court last year those subsequent cases even though they're after the district court's decision are nonetheless factored in in the analysis of whether the air is playing but I want to go back to your other point about the central importance of the district court's role in the sentencing process I actually think that's a key reason why the court should remand here for resentencing so that the court can exercise its discretion under a correct calculation of the guidelines range the government argues that you know even if it is plain air well the district court went above the guidelines range based on the 3553 a factors so you should deny relief but I think the court should reject that position just you know that that rationale for remand would sort of wipe out Alana because we could say in every instance we should remand a case so that it can be an error free proceeding and done under the correct way so I mean that the rationale you've given me would would just undercut the whole reason well your honor I don't think it would undercut Alana was that there are four prongs for Alana there's no doubt that plain air relief is going to be a typical or unusual but the first two prongs of Alana whether there's an error and whether it's as plain and obvious where you have a consensus across the circuits as it in as in this case are going to do a lot of work in most cases so when you get to the third prong I think the Seventh Circuit is right to recognize especially in light of Supreme Court's decision last year in pew that an error in calculating the guidelines range impacts a person's substantial rights I think here we can show the same thing that was shown in Slade where this court remanded on plain air review based on an error that was acknowledged by the court and granted resentencing in that case I think here the sentence is even relief is even more justified than in Slade if you just compare the magnitude of the error in Slade this court granted plain air relief based on a three level increase in the offense level I would I would think your initial problem and perhaps your only problem in this case is the clarity of the error I don't know that the magnitude really affects too much the plain error analysis at least in my mind and so we don't have four circuit prior precedent interpreting this statute right your honor I disagree with that I think if you look at the Garcia case Garcia versus Gonzalez it says it's interpreting section 16a of title 18 which is the same force clause that applies under section 2l 1.2 and when it interprets that it says that what we are dealing with they are a reckless assault does not qualify under 16a because quote it does not contain an element that there be the intentional employment of physical force against a person or thing here we don't have that we don't just as in Garcia we don't have a statute that requires the intentional employment your honor Leocal was an immigration case and the Supreme Court very clearly said there that the same language has to be interpreted consistently whether in the immigration context or in the criminal context that's why you see a footnote in Leocal which says that even if there was some ambiguity here we would have to apply again I absolutely agree that this is under a plain-air analysis but we've got a case USB night where there was a miscalculation of a sentence and there was a downward variance in that case there's an upward variance in this case and the court held in that case that that defendant's substantial rights were why wouldn't the analysis be the same whether you're over or under the guidelines I think I'm aware of the night case your honor and I think the difference the first key difference with night is the magnitude of the air and I agree with judge Mott's that the magnitude might not have any impact on whether it's a whether the air is plain I think it does factor into the calculus in terms of whether it affects substantial rights and whether it warrants this courts exercise this discretion under plain air review in night it was only a two-level error in the guidelines and the sentence that was imposed was nonetheless still below the what would have been the correct guidelines range and so for that reason I think it's very different than here where you're dealing with a seven-level increase not a two-level increase you're dealing with a situation where the air resulted in increasing the guidelines range by approximately 125 to 140 percent some great injustice but the you know I've read the Trenton sentencing transcript with air I could district courts going to arrive at the same conclusion no matter what he he's he's very emphatic about this whole matter and he talks about as I look at this file and I see a defendant who has after his deportation has returned to this country on six occasions been removed on six occasions has a criminal record that includes drug convictions convictions but indecent exposure for obstruction of justice for theft on several of these he's returned here very quickly after having been deported that's just the tip of the just the tip of the iceberg this district course with this pattern of being deported and returning deported and returning 40s and returning with their almost every one of these returns there being additional crime on the history your honor I absolutely agree that judge Reininger made clear his reasons for varying upward here but the problem is that the problem is that I can see that apart from the error in the guidelines calculation judge writing got the process part right what he did is just what the Supreme Court says you're supposed to do in the pew case which is he calculated the guidelines range he just got it wrong because we didn't point it out and we can see that and he then used that guidelines range as the jumping-off point he said look I think there's a factor in this case the fact that he's been in and out of the country all these times it's not accounted for in the way that the guidelines are calculated there's no specific offense characteristic that takes into account with deportations and returns that aren't prosecuted criminally he said because of that I think the way the guidelines work here there's a factor that's missed under 3553 a so I'm going to vary above the guidelines and he varied above by 70% had he done that exact same analysis citing all the reasons that you cite and using the correct guidelines range he would have ended up at a sentence of 36 months which is less than half of the 78 months he imposed here mr. governor just before you sit down maybe you can tell me the case that you think that is best for you not on the underlying question whether this is error but has the same sort of confluence of no circuit precedent directly on point transfer from one context to another context and and I understand that you say there's arguably no circuit split but you've read the government's brief you know what they say so what other case would be similar to that and a record like this there was a lot packed into that questions right but I'm asking you to try to in other words I was trying to explain to you what I meant by your best case so not your best case on whether this is error but your best case on whether we should apply the plane air review and grant you relief if you don't have you know sure comes to calm mind that's well I think that they're on the question of applying interpretive principles from the immigration context here I think Lea Kyle is very clear on that so that would be the best case in terms of the broader question I think the two cases I would point to are slayed where there is actually that where the court exercises its discretion under the third and fourth prongs of Olano based on a much less significant change in the guidelines range than is present here I don't think I've been clear I was trying to find a case that had all these elements and I couldn't find one and you're it doesn't seem to me that you're articulating one well I will agree there's maybe not a case is exactly like this one I think this well I think it doesn't because there isn't a circuit split in this case and because I again I think the Garcia case and the Bayron new case well I mean I give mr. Miller credit for coming up with something that at least on its surface looks like a circuit split but when you dig below the surface in Martinez Martinez and Curtis those two statutes differ in a material respect that absolutely explains the different outcome in those cases there's the government I'm sure if there were one out there the government would have found the case that declines to extend Lea cows holding to recklessness cases there's not a case like that out there may it please the court my name is William Miller here on behalf of the government because the defendant is unable to cite to any binding authority addressing a statute making a crime like this one he's unable to satisfy his burden establishing plain error of you the government concedes that there was error correct the government I don't concede that well you make an argument in your brief that there's no error no judge Mott's I did not don't you think that argument is foreclosed now you can't come up here on appeal say there isn't any error if you've never made the argument in your appellate brief that's likely correct your honor and in the just by way of you're giving up much you know prosecutors gain credibility by conceding what they must and moving on and I understand that that fully I just correct that's where I was headed judge Wilkinson is this case doesn't require taking a position on error necessarily because any error in this case would not be plain because the defendants able to cite to any binding authority addressing a statute like this one and I think it's important to understand at the outset what exactly this California statute requires what this statute requires as interpreted by the California courts is the intentional firing of a gun it requires general intent as to the consequences of hitting the building and so it's different from the statutes that mr. Carpenter relies on because unlike those statutes were which are essentially reckless battery statutes they're recklessly causing some sort of harm here the nature of the force is specified in the crime it requires the intentional shooting of a gun which is violent force and so in that sense it's distinguishable from the cases on which mr. Carpenter relies where there is no discussion in the statute or element of violent force in the statute here the willful employment of violent force is an element of the crime and so even under Leocal it satisfies that that part of the of Leocal's holding and no one would dispute that shooting a gun is violent force under the Supreme Court case in Johnson and so that's really what we're dealing with here is a crime that requires the intentional use of violent force with a general intent as to the consequences and that issue has divided courts and I would point the court to is the force clause requiring your view that that you anticipate a specific consequence of those words against the person of another does it require that you intend to inflict force upon a shooting into an inhabited dwelling may or may not hit somebody or whatever you could be just trying to shoot the window out for example rather than aiming at a particular does that undercut your your force clause argument if you just if you just don't like the people in the house you don't want to hurt them necessarily but you would like to just shoot shoot out a window or or you know just mess up their door not that these are admirable behaviors but I'm just wondering how that squares with against the person of another in your head I think what people are talking about recklessness right and in your hypothetical judge Wilkinson I think that would at least constitute the threatened use of force because it is firing a gun at an occupied building or in close proximity to an occupied building that would at least rise to the level of threatened force and I would point the court's I would draw the court's attention to the 10th Circuit case in US versus Ramon Silva in that case the court addressed a statute like this one that was a crime that required intentional force but with only a consequences because that's what this California statute does I mean it there's no dispute this California statute has intentionally firing a gun as an element the part where a lesser mens rea comes into play is really only as to the consequences and that's the question that has divided courts Mr. Carpenter has cited the Narvaez Gomez case from the from the 9th Circuit but on the other side you have a 10th Circuit case addressing a very similar statute to this one and in that case the Texas statute says knowingly discharges a firearm at or in the direction of one or more individuals that in the direction of is the same type of language that comes into play with the California statute which says in close proximity to there's not a specific intent that you have to make the hit the consequence and so in that case that the 10th Circuit held that because the intentional force of violence is an it still qualifies under the force clause and so that's where the division really comes in and that's that's why the cases that Mr. Carpenter relies on aren't informative of this question those cases are all about reckless batteries they don't define the element of force here the statute on its face and California courts say that this requires an intentional shooting which is that that's the violent force part and so that's really where the split comes in and then the Illinois statute that was addressed in the Curtis case by the 7th Circuit it functions the same way knowingly or intentionally discharges a firearm in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person it's the same as this California statute you have intentionally firing the gun and then it's in the direction of a vehicle here we have in close proximity to a to an occupied structure and so it functions the same way and the 7th Circuit held that that also was a crime of violence and I think that the important part and it this comes out of the Silva case there was a dissent in that case and it and the majority says the dissent focuses on what apprehension causing aggravated assault lacks as an element namely the specific intent to induce the fear which is the consequence missing from its analysis is a discussion of the intentional conduct that the crime actually prescribes and so that's the same problem we're confronted with here and so you know for those reasons there there truly is a split and the immigration cases that the defendant cites from our circuit don't govern because the crime at issue is very different and I would also point out that the fact that those cases arose under the immigration context is also important here because although the context is the same the definition doesn't function the same way that comes out of people versus overman which is the case that Narvaez Gomez relied on when it found that this statute requires a lesser mens rea and anything you said the last five minutes but that doesn't necessarily mean that I think there's no plain error here so that maybe you could give me the essence of the argument that one has to follow to find there is no plain error because maybe I've misunderstood what is required to find no plain error if I have to if I have to buy your interpretation of all these cases I'm not so sure yeah and I apologize but my point was just to sort of highlight that there was a bit of an over generalization in the defendant's argument my argument is that any error here is not clear or obvious that's what this court has to decide and clear or obvious the question is is there binding authority from the Supreme Court or the Fourth Circuit addressing this issue and the point I was making before is really correct and correct the only thought that and I perhaps I was it was you know not good strategy for me to start with that the point of that discussion so the courts are truly divided on this issue but as to whether or not there's binding authority from the Supreme Court or the Fourth Circuit in this case the neither a court has addressed this statute or one like it and so that's the first part and then the second part is that these cases on recklessness address a different type of statute than we're dealing with here and arise in a different context the immigration context and in the immigration context the mr. Carpenter is correct to point out that this force clause uses the same language as the illegal reentry context but the definitions are different in material ways in the immigration context the force clause where you have a crime with an element of force and a residual clause there's no list of enumerated offenses and that's different from the illegal reentry context where you have enumerated offenses and a force clause and leading into that force clause the language actually says or any other crime that has as an element of force and so similar to the Supreme Court's analysis and Begay and Sykes the second part of the definition refers back to the first and when you look at that definition of enumerated offenses in the illegal reentry guidelines you find a crime that has the same mens rea as the crime that we're dealing with here and that's that's manslaughter manslaughter is a general intent crime as this court has held in Peterson and so the context matters I guess is the point that I'm trying to make and those cases that the defendant relies on arise in a different context and address different kinds of crimes and so they don't provide an answer to the question we're dealing with here and so that's that's the government's argument is that there's a lack of binding authority on this particular type of type of crime. Moving to whether to the third and fourth prongs of plain error review that definitely presents a closer question as to whether or not the defendant has shown a substantial likelihood or a non-speculative basis that the sentence would be different but I do think I agree with your argument to rely on the second and fourth prongs. Just leave the first and third prongs alone. Right. We only have to find one of the prongs not satisfied. It just seemed to me that your argument on prongs two and four was stronger than your arguments on one and two. One and three. One and three. We didn't need to get into one and three but you only need to win on one prong. That's right. I would agree with your characterization Judge Wilkinson. The others are much closer questions. Absolutely. The government does not deny that. But the second prong I believe in the absence of binding authority is clearly in the government's favor. And as to the fourth prong, the question there is whether or not failure to address the error would call into question the fairness and integrity of judicial proceedings. And here, in light of the defendant's history and characteristics as thoroughly explained by the district court, a 78-month sentence for a defendant like this one simply doesn't call those things into question. I mean, the court came very close to saying, you know, this is the sentence I'm going to impose regardless. I mean, it's somewhat of a unique sentencing hearing because defense counsel actually reopened the argument after the court had announced its sentence. And called into question his sentence. And so the court continued, said, I want to make a good record for this and continued to thoroughly explain his sentence. And so it wasn't a case where he said, you know, this is my sentence regardless of how any of the other issues come out. But it comes pretty close in light of the fact that they sort of reopened the analysis. And the court's discussion of the factors is spot on. It's a pretty extensive discussion and it's a pretty thoughtful discussion. I mean, it goes on for a number of pages and it talks about respect to law and deterrence and the kind of 3553A factors you would expect. But it wasn't as if the district court just gave the whole thing the back of its hand. You know, it didn't. You have a very good idea of why this sentence was imposed. In fact, it was repeated about three or four times. Right. And a lot of that is by virtue of the fact that this defense counsel sort of reopened the argument. And I think the factor that the court found most significant is that the defendant had committed several illegal reentries and had been given a second chance. But rather than treating it, these are the words of the district court, rather than treating it as a second chance, he saw it as a He already had the safety valve, the benefit of the safety valve revision earlier, didn't he? He had been fast-tracked several times before. And so he had little to no consequences for his prior illegal reentry crimes. And so that was really the factor that was driving the district court. Is there anything further you wish to add? Let me ask my co-panelists if they have anything. Thank you. We think we understand your argument. And Mr. Carpenter, let's hear from you in rebuttal. I'll start back with the plainness issue. The government seizes now, sort of for the first time I think in the 28-J letter, on the fact that this California statute in Overman says that it requires intentional discharge of a gun, but then with reckless disregard for the consequences. That intent requirement isn't what we're looking for under Leocal. Under Leocal, and as it's been extended by this court in Bayron and Garcia, what we require under the force clause is an intentional use of force against another person. And some intentional acts somewhere along the way is not enough. If you look at the facts of Leocal itself, it's a DUI where a person drives their car into someone and causes injury. Certainly the drinking and then the getting in the car and driving, all of those are intentional acts. But they're undertaken with reckless disregard for the safety of others. The same is true with the intentional discharge of a firearm. There are many circumstances in which intentionally discharging a firearm is not directed against another person at all, at a firing range, while you're hunting, etc. What is required under the force clause is an intentional use of force against another person. That's what's missing here. And that's why the cases that the government cites as potentially creating some type of conflict don't really create a conflict. Mr. Miller cited one of the cases where the person is required to fire at a person or at a vehicle in which they reasonably believe a person is located. That's very different from the statute here. If you look at the facts of People v. Overman, which the California courts held were sufficient to satisfy this statute, the defense theory there was, I fired the gun in the air. The court said, that's fine because you were in close proximity to a building. So the discharge of the firearm wasn't directed at a person. It wasn't even directed at a building. And to answer Judge Wilkinson's question, it's absolutely not enough under 2L1.2 if the use of force is directed against the building. Under 2L1.2, it requires the use of force against another person. In that sense, 2L1.2's force clause is narrower than the one in Section 16A. I also want to go back to the question of whether this court's precedent bears on this issue. And Beyrano and Garcia interpret Section 16A and Section 16B of Title 18. And granted, they do so in the immigration context. But in Leocal, the Supreme Court said that those provisions have to be interpreted consistently. If you look at page 11 of the Leocal decision, 543 U.S. 11, it specifically says the mens rea requirement in both 16A and 16B must be interpreted consistently. In those two cases, this court has extended Leocal to cover reckless offenses. And that principle, that reckless offenses don't qualify under those provisions, is uniform. I will concede that this court hasn't addressed this particular statute. So in that sense, sure, the error isn't that plain or obvious. But it doesn't need to be. The principle that is plain and... I'm here again with the recklessness cases. Your opponent made the point in response to what you said in your opening argument that the recklessness cases were cases of reckless battery. And they were very different from the particular statute at issue here, which uses the words willfully and maliciously, which doesn't really convey recklessness. Now, you look at the California decision, I understand what they say about Section 246. But they are not... They're not to the point where they really are... The recklessness cases aren't really dealing with this kind of statute, are they? They're dealing with reckless battery. Well, certainly some of them deal with reckless battery, but none of them are... Their reasoning certainly isn't limited to that circumstance. And nothing in it suggests that this is... And nothing would support the notion that you can have an offense by offense. Well, you require recklessness if it's battery. But if it's something else, we're going to require a different mens rea. The principle that motivates, that underlies the Leocal decision is that in saying that the crime must require the use of force, the natural reading of that is that it's the active, intentional use of force. This Court has extended that in Beyrano and Garcia to say that that doesn't cover reckless uses of force. And here, that's what we're dealing with. I mean, the Ninth Circuit analyzed this very statute and rejected the very argument that the government's making here. That makes the error plain. And if there is no conflicting authority on that point in any other circuit, and the reckless discharge... Excuse me, the intentional discharge statutes that the government cites are different in material ways. First, none of them deal with the same mens rea requirement that the California courts have imposed upon Section 246. Yeah, you know, that's an interesting argument. But normally, one would expect the District Court to look to controlling authority. And controlling authority is generally found in the Supreme Court and Circuit Court decisions by the District Court. Now, you know, you say, well, the California Supreme Court is controlling authority. It's controlling authority as to that statute. But that's a different thing from being controlling authority in one's own circuit. And the District Courts follow Fourth Circuit opinions. We hope they do. But they don't, you know, they're not... I'm nervous about your idea that the people have to go roaming all over the country. Well, I think that when you combine the Ninth Circuit case that deals with this particular statute and says it doesn't qualify based on this recklessness principle, and you combine that with this Court's decision applying that very same recklessness principle, I think that makes the error plain. But I wanted to turn just for a second to Judge Floyd's question earlier about why to exercise discretion under the fourth prong here as compared to Knight. And I think one of the starkest illustrations of why it's warranted here is the disparity in the size of the sentence. In Slade, for example, where the court granted relief, the sentence was 39% above the top end of what would have been the correct guidelines range. Here, we're dealing with a sentence that is nearly four times the top end of the correctly calculated range and more than five times the low end of the guidelines range. That's an error that I think warrants this Court's exercise of discretion. Thank you. Thank you so much. Um, we'll come down and greet you both and then, um, adjourn in order to reconstitute the panel. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd